Manuel TURCHAN, and Curtis Walker, Plaintiffs,

v.

BAILEY METER COMPANY, Defendant.

Civ. A. No. 1703.

United States District Court D. Delaware.

May 14, 1956.

---

202

Hugh M. Morris and Andrew B. Kirkpatrick, Jr., of Morris, Steel, Nichols & Arsht, Wilmington, Del., for plaintiffs and applicant for intervention.

Richard F. Corroon, of Berl, Potter & Anderson, Wilmington, Del., and Louis V. Granger, Cleveland, Ohio, for defendant.

RODNEY, District Judge.

This is an action for letters patent pursuant to 35 U.S.C. § 146.[1] Technical aspects of the patent application are not here material but some facts must be set out. In the Patent Office an application of the plaintiffs for a particular claim (No. 36) was denied by the Acting Commissioner of Patents whose determination was sustained by the Board of Patent Appeals. In those proceedings in the Patent Office, the plaintiffs were represented by Robert A. Sloman under a power of attorney which must later receive more specific consideration. Under this power of attorney Thomas S. Donnelly was associated as counsel. Upon the final rejection of the claim in the Patent Office, proceedings were taken by the present plaintiffs in the District Court of the United States for the District of Columbia and the present plaintiffs were there represented by the same counsel that had represented them in the Patent Office proceedings.

The present plaintiffs prevailed in the District Court before Judge Tamm and the matter went back to the Patent Office.

Upon the return to the Patent Office, interference proceedings were had with another patent application filed by one Clarence Johnson, assignor of the present defendant. After certain substitutional proceedings, priority of patent was awarded to Johnson and this suit follows. In the Patent Office proceedings, following the trial in the District Court, the present plaintiffs were represented by the same counsel as theretofore.

The present questions arise from a motion by the defendant to dismiss the complaint for "lack of proper parties plaintiff". The motion is based upon an affidavit of Curtis Walker, one of the present plaintiffs, who was a joint applicant for the patent in the Patent Office.

In the affidavit, Walker says he is not now and has never been a party plaintiff in the present action and that he has never authorized the present counsel or any one else to bring the present or any such suit for him.

The present motion presents the following questions:

"(1) Does the patent law allow one joint applicant for a patent to prosecute a proceeding under 35 U.S.C. § 146, when the other joint applicant refuses or fails to join in such suit?

"(2) Did the power of attorney given to his attorneys in connection with the Patent Office proceedings, when considered in the light of the conduct of Walker and other circumstances, authorize the institution of this suit?"

The questions become material because, by virtue of statutory or other regulations, the suit was required to be filed within a stipulated time after final action of the Patent Office and if this suit

[1.] This section constitutes a portion of what was formerly known as a Section 4915 proceeding.

is dismissed such dismissal operates as final adjudication of patent rights.

The motion to dismiss the complaint is couched in somewhat unusual language. The assigned reason is that the complaint be dismissed "on the ground of lack of proper parties plaintiff". Perhaps the unusual facts explain the unusual language. Rule 12b(7) of the Federal Rules of Civil Procedure, 28 U.S.C., contemplates a motion to dismiss for "failure to join an indispensable party". Here the indispensable party contemplated by the motion was joined as plaintiff but, it is contended, was improperly so joined. The only reason for this mention is because it seemed to be assumed at the argument that the reception of matters extraneous to the pleadings resolved the present motion to dismiss into one for summary judgment. That result, under the Rule, seems to apply only to a motion under 12(b) (6).[2]

I am of the opinion that the motion to dismiss the complaint must be denied. This conclusion is based upon two independent and equally compelling reasons and both must receive consideration.

 1. The first question concerns the indispensability of Walker in connection with the suit. The question is not as to such indispensability in general connection with the action but the specific indispensability as a party plaintiff at the time the action is instituted and solely growing out of the fact that Walker was one of two inventors and applicants for a patent and the subsequent seeking final remedy for alleged error of the Patent Office. This naturally requires some attention to the relative rights, inter sese, of two inventors at the various stages of their efforts. That two inventors may obtain a patent is clear. It seems equally clear that normally both inventors should apply for a patent. Provision is expressly made, however, by 35 U.S.C. § 116 for the protection of the rights of one inventor when a recalcitrant co-inventor refuses to join in the application or cannot be found.[3] Assuming the patent is granted to two inventors, then the relationship created is a co-tenancy.[4] It is true that the co-tenancy under principles of patent law differs somewhat from usual common law co-tenancies and presents such anomalies that the Circuit Court of Appeals for this Third Circuit has said "Joint owners of a patent are at the mercy of each other".[5] One may use the patent or license others to so use [6] without liability to other owners but a suit for infringement must be brought by all co-owners.

It seems clear that there is a logical sequence in the various efforts to obtain a patent and extending from the initial application to the final grant and including proceedings under 35 U.S.C. § 146.[7] The Supreme Court and other courts, by varying language, have indicated the close connection between Patent Office proceedings for a patent and the old § 4915 proceedings as other and further steps for that same patent. In Gandy v. Marble,[8] it was said that § 4915 proceeding is "clearly a branch of the application for the patent" and that "the proceeding is, in fact and necessarily, a part of the application for the patent". So in Becker v. General Chain Co.,[9] it is said "a proceeding under section 4915 is in reality a continuation of the prosecution of the original application" and other

2. See some discussion of the Rule in Dimet Proprietary, Limited v. Industrial Metal Protectives, D.C., 109 F.Supp. 472.

3. Patent Office Rules of Practice, § 1.47, 35 U.S.C.A.Appendix.

4. Drake v. Hall, 7 Cir., 220 F. 905.

5. McDuffee v. Hestonville, M. & F. Pass. R. Co., 162 F. 36, 38.

6. 2 Walker on Patents, Deller's Ed., page 1450.

7. Formerly a portion of R.S. § 4915.

8. 122 U.S. 432, 440, 7 S.Ct. 1290, 1293, 30 L.Ed. 1223.

9. 1 Cir., 273 F. 419, 422.

courts have used varying language as expressive of the same view.[10]

The views of these courts are even more strongly suggested by the Court of Appeals for this Third Circuit in Paper Container Mfg. Co. v. Dixie Cup Co.[11] There the Court posed precisely the question here presented in this language:

> "Suppose * * * A and B are assignees of a patent application and the Board of Interference Examiners has awarded priority of invention to the application of party X in an interference proceeding. A desires to prosecute the application in an R.S. § 4915 proceeding but B, believing the decision of the Board to have been correct, desires to avoid the expense of any further action or litigation. By his refusal to join as a party plaintiff could he prevent A from maintaining an R.S. § 4915 action in the district court? We are of the opinion that he could not."

The Court remarked upon the analogy of Independent Wireless Tel. Co. v. Radio Corporation of America.[12] The present defendant disputes the correctness of the analogy and urges that the quoted expression of the Court was obiter. With the analogy I am not concerned. While the exact example used by the Court was not precisely before it, yet the subject matter of the inquiry, viz., the proper or necessary parties plaintiff in a § 4915 proceeding was present. Whether the language quoted be obiter or not, it is expressive of the views which I think are correct.

█ The conclusion that a co-tenant of a patent application may perfect the rights to such patent as against a recalcitrant co-tenant who wrongfully maintains an adverse position is in harmony with the general rules which have always prevailed in co-tenancy.[13]

█ The reasoning of cases which require joint patent owners to join in cases of infringement has no application to cases like the present. As one joint owner alone could grant a license, so an infringement suit by another joint owner alone against that licensee could destroy the right to license and the failure of a co-owner to join merely preserves his right to license. Here the failure of one party to join destroys the right of the other to have a statutory hearing upon his invention and his right to a patent.

Of course, I am not now considering or determining any question of how, in case the plaintiffs should ultimately prevail, relief may be granted or that any interests of Walker be preserved.

█ 2. For reasons of equal cogency as the foregoing I am of the opinion that the action was properly brought by virtue of the unrevoked powers of attorney executed by Walker supplemented as they were by his clear course of conduct. The facts are as follows:

Turchan and Walker were joint inventors and joint applicants for a patent. They gave to Robert A. Sloman a power of attorney to represent them. The power of attorney reads as follows:

> "they hereby appoint Robert A. Sloman [address] their attorney with full power of substitution and revocation to prosecute this application, to make alterations and amendments therein, to receive the patent and to transact all business in the Patent Office connected therewith."

The power of attorney gave to Sloman the authority to associate counsel with him and pursuant thereto he did associate Thomas S. Donnelly. At a later

---

10. Central Ry. Signal Co. v. Jackson, D. C., 254 F. 103; Garfield v. Western Electric Co., D.C., 298 F. 659, 661; American Steel Foundries v. Robertson, 262 U.S. 209, 43 S.Ct. 541, 67 L.Ed. 953.

11. 170 F.2d 333, 337.

12. 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357.

13. See cases collected in 62 C.J. 565; 86 C.J.S., Tenancy in Common, § 142, p. 546. 14 Am.Jur., page 164.

stage another power of attorney was given by Turchan and Walker to Mr. Donnelly. Pursuant to the powers of attorney in connection with continuation proceedings patent claims were made and other proceedings were had in the Patent Office. After an adverse ruling in the Patent Office, § 4915 proceedings were taken in the District Court for the District of Columbia. Here both Turchan and Walker were represented by Sloman or Donnelly pursuant to the powers of attorney supplemented by a letter in 1951 on Walker's account to "look after his interests". In the Section 4915 proceedings Turchan and Walker were successful. Upon return to the Patent Office interference proceedings were declared and, so far as the record discloses, Turchan and Walker were still represented by the same counsel and by virtue of their original appointment.

The defendant contends that the power of attorney restricted the representation of Walker to the Patent Office and that such authority for representation did not otherwise exist. At an earlier stage of this opinion I have indicated the relationship of proceedings under 35 U.S.C. § 146 to those of the Patent Office and I shall not retread those steps. When the final determination of the interference proceedings was had in the Patent Office, two remedies remained to Turchan and Walker as the unsuccessful parties and with substantially similar results. They could have appealed to the United States Court of Customs and Patent Appeals, or they could bring proceedings such as this under 35 U.S.C. § 146. The former of the remedies, I assume, would fall within the framework of the Patent Office and within the express terms of the power of attorney. It would be a narrow construction to hold that the latter course, in view of the circumstances, would be excluded. The power of attorney given by Walker authorized and instructed his attorneys to act for him, in the Patent Office, to "obtain a patent." Pursuant to that power, certain steps were taken and armed with a letter of Walker's "to look after his interests" § 4915 proceedings were taken in the District of Columbia somewhat similar to the proceedings here and I must assume that Walker knew of these matters and of the subsequent interference proceedings that followed in the Patent Office.

It may or may not have significance that no motion of Walker's asks that he be removed as a party. The affidavit of Walker simply says that he has not authorized any one to bring the suit. If by the affidavit is meant that there has been no express authorization beyond the unrevoked powers of attorney, it may be correct. I hold the powers of attorney were sufficient. To this point I cannot assume the interests of Walker and of the defendant are mutual.

The motion to dismiss the complaint is denied and an appropriate order may be submitted.

\* \* \* \* \* \*

This is another motion in the same proceeding. The proceeding was brought by Turchan and Walker against Bailey Meter Co., assignee of Clarence Johnson, pursuant to 35 U.S.C. § 146. Turchan and Walker were the unsuccessful parties to an interference proceeding in the Patent Office. The complaint is so framed as to specifically involve the question of priority but is silent on the question of validity of the claims of the parties.

The present questions arise from a motion of American Tool Co. to be allowed to intervene as party plaintiff. American Tool Co. is a licensee of Turchan, one of the two applicants for the patent, but not of Walker, the other applicant.

The petitioner contends it has such an interest in the litigation as to entitle it to the intervention as a party. It contends that the plaintiffs are entitled to priority of application and concedes that its licensor, Turchan, on the question of priority can adequately represent the interest of the petitioner and that if such

priority be accorded to the plaintiffs that the validity of the plaintiffs' claim can and should be determined. It contends, however, that should priority not be accorded to the plaintiffs that then the interests of the petitioner for intervention require that the validity of the claims in interference be determined and since the original complaint does not seek such determination that the petitioner should be admitted for that express purpose.

The petitioner contends that if priority be not accorded to the plaintiffs then the result must be that the invalidity of the claims in interference would be established upon the same facts. This, it is contended, must follow since the Board of Patent Interferences determined the plaintiffs lacked priority because the subject of the claim was not inherently disclosed by the plaintiffs' application, inasmuch as it held that other unpatentable devices would perform the same function in the same way notwithstanding the patentability of the count had been predicated upon its performing a new function.

I shall first consider the motion to intervene as growing out of the nature of the "interest" of the American Tool Works. The petition first relies upon the language of 35 U.S.C. § 146. That Section provides for the plaintiff in the action in these words:

"Any party to an interference dissatisfied with the decision of the board of patent interferences on the question of priority * * *" may maintain an action.

The Section provides for the defendant as follows:

"Suit may be instituted against the party in interest as shown by the records of the Patent Office at the time of the decision complained of * * *".

The petitioner for intervention does not come within either category. The statute, however, also states "but any party in interest may become a party to the action" and under this provision the petitioner bases its claim.

■ This Court, as presently constituted in Minnesota Mining & Mfg. Co. v. Chavannes Indus. Synthetics,[14] held that a "'party in interest'" in this statute must be assumed to be an indispensable party—one whose interest is of such a nature that without his presence it would be improper or impossible to adjudicate the matter.

■ The petitioner is shown to have certain contract rights from one of two joint applicants. Under the shown facts the petitioner would seem to be a nonexclusive licensee[15] and as such, I think, is not an indispensable party entitled, as of right, to be made a party by intervention.

The petitioner, however, also bases its claim to intervention on Rules 24(a) and 24(b) covering intervention as of right and permissive intervention. Rule 24(a) (1) gives a right to intervene when a statute of the United States confers an unconditional right to intervene. I have heretofore held that 35 U.S.C. § 146, the only statute relied upon, does not give such unconditional right to intervene. The remaining portions of Rule 24(a) and of Rule 24(b) are interwoven with the grounds upon which the intervention is sought, and will be now considered.

The petitioner, as hereinbefore indicated, has expressly disclaimed any contention that representation of its interests by the plaintiffs on the question of priority would not be adequate. It simply contends that it should be made a party in order that if priority be not awarded to the plaintiffs, through whom the intervener claims, that then it might go forward and test the validity of the claims in interference and on which both plaintiffs and defendant rely. Since, as assignee of one of the plaintiffs, it might be doubtful that the intervener could at-

14. D.C., 128 F.Supp. 659, 661.

15. Waterman v. Mackenzie, 138 U.S. 252, 255, 11 S.Ct. 334, 34 L.Ed. 923.

tack the validity of the plaintiffs' claim, the attack would, in reality, be on the claim of the defendant.

■ There is thus raised again the question of whether in a proceeding under 35 U.S.C. § 146 [16] if the plaintiff does not establish priority the Court should or may proceed further and consider the question of validity. Stemming from Hill v. Wooster,[17] it is well established that if priority is accorded to the plaintiff the Court should then proceed to determine validity. This is because the Court having established priority would adjudge the plaintiff to be entitled to a patent and this should not be done unless validity be also established.

While some courts had held that patentability or validity should be first considered in a § 4915 proceeding, and before priority, yet the matter was set at rest in Sanford v. Kepner, 1952, 344 U.S. 13, 73 S.Ct. 75, 97 L.Ed. 12, where, according to the syllabus, it is said:

"In a proceeding under R.S. § 4915, 35 U.S.C. § 63, brought by an applicant for a patent to review an adverse decision of a board of interference examiners, when a district court has found against petitioner on the issue of priority of invention it need not go further and consider the validity of a rival applicant's claim to a patent on the same device."

The intervener says that Sanford v. Kepner, supra, merely determines that when priority is found against the plaintiff, the Court need not proceed further and investigate validity. It argues that the Court may, however, do so and that the present is the case in which it should be done. Sanford v. Kepner, supra, was only directly concerned with the neces-

sity of examining validity in a § 4915 proceeding after denial of the plaintiff's priority. Whether Sanford v. Kepner left optional such investigation after priority had been found not existing in the plaintiff need not be considered. In this Third Circuit the question has been definitely stated by the Court of Appeals in this language: [18]

"This court has held that where priority of invention is decided against the plaintiff in a proceeding under Section 4915, the patentability of defendant's invention should not be adjudicated."

Citations of the various authorities considering the matter are all set out in the opinion of the Court of Appeals and their inclusion here seems unnecessary.

■ With this specific admonition in mind it would seem that an application to intervene, either under Rule 24(a) or permissive intervention under Rule 24(b), should not be granted where the sole purpose of such intervention is to do that which the Court of Appeals has said should not be done.

This is not an application having as its basis a request for a declaratory judgment. This is expressly renounced. There is no patent and there is no threat. It is not an infringement suit although the ultimate disposition sought after would seem akin to an infringement suit in reverse.

The sole object of the motion to intervene is to accomplish, if and when the opportunity might arise, that which the Court of Appeals has said should not be done.

The motion for intervention is denied and an appropriate order may be submitted.

16. Formerly R.S. § 4915.

17. 132 U.S. 693, 10 S.Ct. 228, 33 L.Ed. 502.

18. Sanford v. Kepner, 3 Cir., 195 F.2d 387, 390.