RECONSTRUCTION FINANCE CORPORATION v. J. G. MENIHAN CORPORATION et al.

No. 2174.

District Court, W. D. New York.

Oct. 8, 1941.

Effingham Evarts, of New York City (Sol A. Liebman, of New York City, of counsel), for plaintiff.

Werner, Harris & Tew, of Rochester, N. Y. (Hugh J. O'Brien, of Rochester, N. Y., of counsel), for defendants.

BURKE, District Judge.

The defendants in this suit in equity to enjoin trade-mark infringement and unfair competition have prevailed. On the original application for normal costs and an extra allowance this Court held that it was without power to allow costs against the plaintiff on the ground that it was a governmental agency and that the law did not permit the allowance of costs. D.C., 29 F.Supp. 853. The Circuit Court of Appeals reversed. 2 Cir., 111 F.2d 940. The case went to the Supreme Court on a writ of certiorari. The Supreme Court affirmed the order of the Circuit Court of Appeals. 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595. The application is here now both for normal costs and an extra allowance. Neither the Circuit Court of Appeals nor the Supreme Court expressed any opinion as to how the discretion of the Court should be exercised.

The practice in equity of granting extra allowances in appropriate cases has its authority in the power of the Court to do equity between the parties. Its use is exceptional. "In any event such allowances are appropriate only in exceptional cases and for dominating reasons of

justice. * * *" Sprague v. Ticonic National Bank, 307 U.S. 161, 167, 59 S.Ct. 777, 780, 83 L.Ed. 1184. The extra allowance sought is technically known in equity practice as costs "as between solicitor and client" and is "as much of the entire expenses of the litigation of one of the parties as fair justice to the other party will permit". Sprague v. Ticonic National Bank, supra, 307 U.S., at page 165, 59 S. Ct., at page 779, 83 L.Ed. 1184.

■ The ground of defendants' application is that the suit was vexatious in that gross charges of fraud and misconduct were falsely made against the defendants and not sustained. The plaintiff alleged and proved that it loaned the Menihan Company the sum of $250,000, taking as security mortgages on its real estate and personal property and assignments of its trade-marks and trade-names. The Menihan Company defaulted and went into bankruptcy. The plaintiff, to protect the loan, bought from the trustee in bankruptcy substantially all of the real and personal property of The Menihan Company including the good-will, trade-marks and trade-names. Within a month after the adjudication in bankruptcy the defendant corporation was formed. J. G. Menihan, Sr., who had been president of the Menihan Company, became president of the new company. J. G. Menihan, Jr., his son, became its vice-president. The new company began the manufacture and sale of shoes and used in its business the trade-marks and trade-names formerly used by the old Menihan Company. The plaintiff claimed that such use was wrongful, that the trade-marks and trade-names were the property of the plaintiff and that the use by the defendants was deliberate and with the intent to fraudulently appropriate to themselves the good-will of the business acquired by the plaintiff and to take advantage of the celebrity in the shoe business of plaintiff's trade-marks and trade-names. The proof showed that the plaintiff had sold at public auction without restriction all the physical assets of the defunct corporation except the real estate. The decision in the case turned on the question of whether the plaintiff, in view of such disposition of the physical assets, had any existing business or trade to which the good-will, trade-marks and trade-names might attach. The Court held that it did not and dismissed the complaint on the merits. The question was fairly debatable. The suit was not vexatious. The plaintiff had no ulterior motive in bringing it. The issues were tried with due dispatch. There is nothing in the record to indicate that the suit was not brought in good faith to protect what the officers of the plaintiff thought were valuable assets acquired by it in an honest attempt to recoup the loss it had sustained on the loan on which The Menihan Company had defaulted. The charges of fraud and misconduct, unproved as the Court held, may not be deemed to be such as would warrant the granting of an extra allowance. Equitable considerations do not require it.

■ I find nothing in the opinion of the Circuit Court of Appeals reversing the order of this Court to indicate, as counsel for defendants suggests in the briefs filed, that its prior ruling in Gold Dust Corporation v. Hoffenberg, 2 Cir., 87 F.2d 451, 454 is to be viewed as obsolete. I take it to be the rule as stated there "that counsel fees will not usually be allowed against an unsuccessful litigant". That seems to be consistent with the view expressed in Sprague v. Ticonic National Bank, supra. Where costs, other than normal costs, are allowed in equity cases there usually is a fund which has been recovered through the successful party's efforts in which others similarly situated share or a variant thereof as where the rights of others similarly situated have been established as a result of stare decisis. Sprague v. Ticonic National Bank, supra. But the presence of a fund or its equivalent is not essential to the awarding of extraordinary costs where other equitable considerations require it. See Guardian Trust Co. v. Kansas City Southern Ry. Co., 8 Cir., 28 F.2d 233, 241. Here there is no fund and there are no special circumstances which amount to appropriate equitable considerations which move the Court in its discretion to grant an extra allowance.

The defendants should have ordinary costs which may be taxed in the usual manner.